UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.     Case No.: 8:18-cr-99-T-17JSS

ANTONIO MARQUIS RODDY
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Antonio Marquis Roddy's Motion to Withdraw Guilty Plea (Dkt. 513), and the Government's response in opposition (Dkt. 520). On August 27, 2019, the Court held an evidentiary hearing on the Motion. Because Defendant received close assistance of counsel and entered his guilty plea knowingly and voluntarily, the Court recommends that the Motion be denied.

**FACTUAL FINDINGS**

On February 27, 2018, a federal grand jury returned an indictment charging Defendant and his coconspirators in connection with a series of armed robberies committed in the Middle District of Florida. (Dkt. 1.) Count One charges Defendant with conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). (*Id.* at 1-2.) Counts Four and Six charge Defendant with Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a)-(b) and 2. (*Id.* at 4-6.) Count Five charges Defendant with brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). (*Id.* at 5.) Count Seven charges Defendant with discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).[1] (*Id.* at 6.)

In June 2018, Defendant hired Roger Weeden, Esq., to represent him. Mr. Weeden practiced criminal law for approximately 40 years and previously represented defendants charged

---

[1] A superseding indictment, returned on April 10, 2018, charges Defendant with the same offenses. (Dkt. 77.)

with violations of § 924(c). During their initial meeting, Mr. Weeden reviewed the Indictment with Defendant, discussed his options, and explained the federal court sentencing process. Defendant testified that Mr. Weeden did not personally review the discovery materials with him. But Mr. Weeden credibly testified that over the course of three to four meetings with Defendant, he provided Defendant with discovery, discussed the facts of the case with him, and discussed the option of either pleading guilty or proceeding to trial.

Based on cell tower location data, the cooperation of several codefendants, and Defendant's admission to a hospital after one of the robberies, Mr. Weeden concluded that the Government's case against Defendant was strong. Defendant did not generally deny his involvement in the charged offenses but told Mr. Weeden that he did not discharge a firearm, as charged in Count Seven of the Superseding Indictment. Defendant's primary concern was preserving the opportunity to fully cooperate with the Government in an effort to reduce his sentence.

On September 7, 2018, Mr. Weeden provided the plea agreement to Defendant during an in-person meeting at the jail. The meeting lasted at least an hour. During the meeting, Mr. Weeden discussed the elements of the offenses and reviewed the factual basis for the plea agreement. Mr. Weeden fully reviewed the plea agreement with Defendant, including the provisions regarding mandatory minimum terms, cooperation, and the appellate waiver. Mr. Weeden advised Defendant that he faced a 25-year mandatory minimum sentence. At the time, Mr. Weeden was uncertain whether Defendant's criminal record would qualify him for sentencing as a career offender. Nevertheless, Mr. Weeden discussed the possibility that Defendant could be considered a career offender. Defendant was aware of that possibility before his change of plea hearing took place.

Mr. Weeden explained to Defendant that cooperating with the Government could help improve Defendant's chances of receiving a reduced sentence. Mr. Weeden stressed to Defendant that, unlike in state court, there could be no guarantees about the length of sentence Defendant would receive. Mr. Weeden never calculated or advised Defendant regarding his sentencing range under the United States Sentencing Guidelines ("Sentencing Guidelines"). Instead, he advised Defendant that his best estimate based on his experience was that Defendant's sentence would fall in a range of around 20 years of imprisonment. Although Defendant testified that Mr. Weeden promised him that he would receive a sentence of ten years of imprisonment if he pleaded guilty, the Court does not find this testimony credible. Defendant told Mr. Weeden that he hoped to receive a sentence of ten years of imprisonment, but Mr. Weeden advised Defendant that this was "substantially unlikely."

### A.  The September 10, 2018 Plea Hearing

On September 10, 2018, the parties entered into a written plea agreement in which Defendant agreed to plead guilty to Counts One, Four, Five, Six, and Seven of the Superseding Indictment. (Dkt. 236.) On that same day, Defendant appeared before the Court for a change of plea hearing. (Dkt. 243.) During the hearing, Defendant informed the Court that he needed more time to discuss the case with his attorney. (Dkt. 509 at 9-10.) Mr. Weeden informed the Court that he recently spent two hours reviewing the case with Defendant. (*Id.* at 10.) The Court took a recess to allow Defendant to confer with Mr. Weeden. After the recess, Defendant remained uncertain concerning whether he wanted to proceed with the plea hearing. (*Id.* at 10-11.) The Court adjourned Defendant's change of plea hearing and indicated that it could be rescheduled at a later time upon the parties' request. (*Id.* at 14.)

At the conclusion of the hearing on September 10, 2018, Defendant asked to speak with the Assistant United States Attorney and the Federal Bureau of Investigation ("FBI") special agent assigned to the case. (Dkt. 520 at 3.) Mr. Weeden, the Assistant United States Attorney, and the FBI case agent met with Defendant and answered Defendant's questions about the facts of the case, the Government's evidence, and the potential impact of providing substantial assistance as described in the plea agreement. (*Id.*) After this discussion, Defendant entered into an amended written plea agreement. (Dkt. 257.) The amended plea agreement changes language within the factual basis to state that Defendant "and/or" his coconspirator returned gunshots during the Palmetto Street Circle Robbery, as charged in Count Seven of the Superseding Indictment. (Dkt. 257 at 27.) Defendant and his counsel initialed the handwritten changes to the amended plea agreement. (*Id.* at 3-4, 27.)

### B. The September 12, 2018 Plea Hearing

On September 12, 2018, pursuant to the amended plea agreement, Defendant pleaded guilty to Counts One, Four, Five, Six, and Seven of the Superseding Indictment. (Dkt. 252, 257.) During the plea colloquy, the Court confirmed that Defendant was satisfied with the advice of his counsel, inquiring as follows:

> THE COURT: Now, I do want to talk with you about your satisfaction with your lawyer. We did discuss this earlier in that you wanted to and did, as you are entitled to, take additional time to meet and talk with your attorney. So let me ask you, as you sit here under oath, did you have a full opportunity to review both the facts and the evidence in your case in consultation with your lawyer?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Have you discussed with your lawyer all the options that you have in your case, specifically to include the option to take your case to trial if you wanted a trial? Did you all discuss that?
>
> THE DEFENDANT: Yes, ma'am.

>THE COURT: Has your lawyer done everything you've asked him to do for you in your case?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: And are you then fully satisfied with the advice and representation you've received in your case?
>
>THE DEFENDANT: Yes, ma'am.

(Dkt. 510 at 10-11.) During the plea colloquy, the Court also addressed Defendant's understanding of the plea agreement, confirming that Defendant understood each of the charges. (Dkt. 510 at 12-14.) The Court went on to confirm that Defendant understood that while the Sentencing Guidelines would be used to calculate a reasonable sentence, Defendant's sentence would be determined and imposed by the presiding District Court Judge. (*Id.* at 8-9, 16-17.) Defendant confirmed his understanding that, although he may have discussed the Sentencing Guidelines with his counsel, there could be no promises or guarantees made to Defendant about the sentence he would receive. (*Id.* at 17.) The Court also confirmed that Defendant understood that he could not later attempt to withdraw his guilty plea because he expected a different sentence. (*Id.*)

Also, during the plea colloquy, the Court confirmed that Defendant understood that he was waiving his right to appeal, with the exception of "four very limited grounds," which the Court then explained. (*Id.* at 22-25.) During this portion of the plea colloquy, the Court provided time for Defendant to discuss the appeal waiver with his attorney, and Defendant then confirmed that he fully discussed the appeal waiver with his counsel and had no further questions on the issue. (*Id.* at 24-25.)

The Court confirmed that Defendant understood the mandatory minimum and maximum terms of imprisonment he faced:

5

> THE COURT: Now I want to talk with you about the maximum punishment you're facing. And that is reflected – it's included in your plea agreement starting on page 2, Paragraph 2. Counts 1, 4, and 6 each carry a maximum sentence of 20 years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order you to make restitution to any victim of the offense or to the community. Do you understand the maximum punishment you're facing as to those counts?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: As to Count 5, Count 5 is punishable by a mandatory minimum term of imprisonment of seven years up to life, consecutive to any and all other sentences, a fine of $250,000, a term of supervised release of not more than five years, and a special assessment of $100. Do you understand the maximum punishment you're facing for Count 5?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And for Count 7, Count 7 is punishable by a mandatory minimum term of imprisonment of 25 years up to life,[2] consecutive to any and all other sentences, a fine of $250,000, a term of supervised release of not more than five years, and a special assessment of $100. With respect—with respect to certain offenses, the Court shall order you to make restitution to any victim of your offense or to the community. Having said that, do you understand the maximum punishment you're facing for that charge?
>
> THE DEFENDANT: Yes, ma'am.

(*Id.* at 25-27.)

The parties also addressed the handwritten amendment to the plea agreement. The parties amended the language on page three of the plea agreement to conform with the prior change regarding the discharge of a firearm. (Dkt. 257 at 3-4, 27; Dkt. 510 at 33-36.) The Court confirmed

---

[2] Effective December 21, 2018, the First Step Act of 2018 amended § 924(c)(1)(C) to strike "second or subsequent conviction under this subsection" and insert "violation of this subsection that occurs after a prior conviction under this subsection has become final." Pub. Law 115-391, December 21, 2018, 132 Stat. 5194, § 403. Congress made this amendment retroactive "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* at 5222. Thus, as the Government acknowledges, Count Seven is now subject to a 10-year mandatory minimum term of imprisonment (consecutive to all other counts). (Dkt. 500 at 32-33.)

6

Defendant's understanding that despite the amendments, he remained "subject to a mandatory minimum sentence of 25 years' imprisonment and a maximum sentence of life imprisonment" as to Count Seven. (Dkt. 510 at 33-36.)

After the Assistant United States Attorney read the factual basis for the charges, the Court confirmed that Defendant was pleading guilty because he was, in fact, guilty of the charged offenses. (Dkt. 510 at 43.) Defendant confirmed that no one promised him anything to have him plead guilty. (*Id.*) Defendant also confirmed that he told the truth in court during the plea colloquy. (*Id.* at 44.) Based on Defendant's responses during the plea colloquy, the Court found that Defendant was fully competent to enter the plea, that he understood the nature of the charges he was pleading guilty to, and that he understood the consequences of pleading guilty. (*Id.*) The Court found that the plea was supported by an independent factual basis as to each of the charges against Defendant. (*Id.* at 45.) The Court concluded by stating that it would be recommending that the plea of guilty be accepted. (*Id.*)

Following the plea hearing, the Court entered a written report and recommendation recommending acceptance of Defendant's guilty plea. (Dkt. 255.) On September 27, 2018, the presiding District Court Judge accepted Defendant's guilty plea, adjudicated Defendant guilty, and scheduled Defendant's sentencing hearing for January 11, 2019. (Dkt. 305.)

On October 3, 3018, and October 9, 2018, Defendant testified as a witness for the Government in the trial of Defendant's coconspirator Shamar Thomas. (Dkt. 337, 440, 449.) During his testimony, Defendant described his involvement in the robberies which were the same crimes he pleaded guilty to on September 12, 2018. (Dkt. 440 at 254-274, Dkt. 449 at 12-35.)

On May 22, 2019, the United States Probation Office issued its Final Presentence Investigation Report ("PSR"). According to the PSR, Defendant's applicable guidelines range for

Counts One, Four, and Six is 151 months to 188 months of imprisonment based on Defendant's adjusted offense level and criminal history category as a career offender. (Dkt. 500 at 14, 28.) Count Five carries a mandatory consecutive minimum term of seven years of imprisonment and Count Seven carries a mandatory consecutive minimum term of ten years of imprisonment. (Dkt. 500 at 15.)

On May 29, 2019, the Government filed its Sentencing Memorandum. (Dkt. 502.) Based on its pending request for a four-level downward departure, the Government seeks a sentence of 110 months of imprisonment on Counts One, Four, and Six; seven years of imprisonment on Count Five (to be served consecutive to all other counts); and ten years of imprisonment on Count Seven (to be served consecutive to all other counts). (Dkt. 502 at 1.)

During a hearing on May 31, 2019, Mr. Weeden moved to withdraw from his representation of Defendant, explaining that Defendant wished to withdraw his guilty plea. (Dkt. 504.) The Court granted Mr. Weeden's motion to withdraw as counsel and appointed a new attorney to represent Defendant. (Dkt. 507.) On August 1, 2019, Defendant, through counsel, filed his Motion to Withdraw Plea. (Dkt. 513.) The presiding District Court Judge referred the Motion to the undersigned for issuance of a report and recommendation. (Dkt. 514.) The Government opposes the Motion to Withdraw Plea. (Dkt. 520.)

## APPLICABLE STANDARDS

A defendant can withdraw a guilty plea after the Court has accepted it but before sentencing if he shows a fair and just reason to do so. Fed. R. Crim. P. 11(d)(2)(B). This rule is construed liberally. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). "If, in the exercise of the court's discretion, there appears to be any reason to allow withdrawal of a guilty plea prior to sentencing, leave should be freely granted." *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir.

1979) (per curiam) (citing *Kercheval v. United States*, 274 U.S. 220 (1927)).[3] However, "there is no absolute right to withdraw a guilty plea prior to imposition of a sentence. The decision to allow withdrawal is left to the sound discretion of the trial court." *Buckles*, 843 F.2d at 471.

It is the defendant's burden to show a fair and just reason to withdraw his plea. *Buckles*, 843 F.2d at 471. Factors to be considered regarding whether a defendant has met this burden include "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 472 (citation omitted). If the first two factors are resolved in favor of the Government, a court need not give the second two factors considerable weight. *See United States v. Gonzalez–Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

## DISCUSSION

Defendant argues that he should be permitted to withdraw his guilty plea because he did not receive close assistance of counsel and because his counsel assured him that he would receive a sentence of ten years. Defendant also argues that his attorney failed to explain the possibility that he could be sentenced as a career offender. (Dkt. 513 at 4-6.) Defendant maintains that his counsel's assurances and inaccurate advice regarding the potential penalties Defendant faced rendered his plea involuntary. (*Id.* at 5-6.) In response, the Government asserts that Defendant received close assistance of counsel in connection with his plea and that Defendant's plea was knowingly and voluntarily entered. (Dkt. 520 at 10-14.)

---

[3] All decisions of the former Fifth Circuit entered prior to October 1, 1981, have been adopted as binding precedent by the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### A. Close Assistance of Counsel

In assessing whether close assistance of counsel was available during the plea process, the Court must examine whether counsel was available and utilized. *See United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996) (finding no abuse of discretion where the district court, after hearing testimony regarding the defendant's allegedly involuntary guilty plea, concluded that he had been ably and professionally represented and that close assistance of counsel was available and utilized extensively).

Upon review of the record, including the plea colloquy and the testimony of Defendant and his prior counsel, the Court finds that close assistance of counsel was available to Defendant in connection with his guilty plea. In reaching this conclusion, the Court evaluated Defendant's statements under oath during the plea colloquy and the testimony of Defendant and his prior counsel, Mr. Weeden. First, the record establishes that defense counsel met with Defendant on several occasions, discussed the nature of the charges with him, reviewed the factual basis for the charges, reviewed the discovery in the case as it pertained to Defendant, explored options for obtaining a reduced sentence based on Defendant's cooperation, and reviewed the plea agreement. The Defendant's review of the plea agreement with his counsel included a review of the potential punishment Defendant faced as specifically explained on pages two through four of the agreement. In addition, the testimony confirms that Defendant's focus was on obtaining the lowest possible sentence rather than proceeding to trial. To help support a lower sentence and minimize Defendant's role, Mr. Weeden obtained a handwritten amendment to the plea agreement to indicate that Defendant was not the shooter identified in Count Seven, which was initialed by Defendant. These circumstances support a finding that Defendant received close assistance of counsel in connection with his plea.

Further, Mr. Weeden testified that he intended to argue for a downward variance from the applicable guidelines range. Because the guidelines are intended to embody the considerations set forth in 18 U.S.C. § 3553(a), a sentencing court may grant a downward variance to fully account for those factors, even where the defendant is sentenced as a career offender. *See, e.g.*, *United States v. Dixon*, No. 2:16CR16-MHT, 2016 WL 4492843, at *6 (M.D. Ala. Aug. 5, 2016) (declining to follow the career offender guideline where defendant's criminal history was not serious). In addition, the Court notes that the mandatory minimum penalty on Count Seven is now a 10-year mandatory minimum term of imprisonment (consecutive to all other counts). *See, e.g.*, *Wright v. United States*, No. 4:95-CR-39, 2019 WL 3046096, at *7 (E.D. Va. July 11, 2019) ("The FIRST STEP Act requires that an individual may only receive the higher 25-year mandatory minimum only after a previous conviction under the same statute has become final.") Thus, in its Sentencing Memorandum, the Government is seeking a sentence totaling 26.4 years of imprisonment. (Dkt. 502.) Mr. Weeden, in turn, proposed a sentence of between 19 and 22 years of imprisonment based on his request for a downward variance. (Dkt. 501.) This range is consistent with the estimate of 20 years of imprisonment that Mr. Weeden testified he provided to Defendant.

More importantly, after the change of plea hearing was continued, Defendant stated, under oath, that he fully discussed the Indictment and the plea agreement with Mr. Weeden and that he was fully satisfied with Mr. Weeden's advice and representation. Defendant confirmed that his lawyer had done everything he had asked him to do. The Court is entitled to rely upon the veracity of these statements as "[t]here is a strong presumption that the statements made during the [plea] colloquy are true," *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), and "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his

11

statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Here, Defendant's statements under oath that he was satisfied with the representation he received demonstrate that Defendant receive close assistance of counsel. *See, e.g.*, *United States v. Gant*, 215 F. App'x 836, 837 (11th Cir. 2007) (holding that statements under oath regarding defendant's satisfaction with counsel demonstrated that defendant received close assistance of counsel).

Defendant has not presented evidence to refute his sworn statements during the plea colloquy that he was fully satisfied with his counsel. Accordingly, the Court concludes that the record and the testimony presented does not support Defendant's assertion that he did not receive close assistance of counsel.

### B. Knowing and Voluntary Plea

"In order for a plea to be knowing and voluntary, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Groover*, 13–80038–CR, 2014 WL 1464470, at *6 (S.D. Fla. Apr. 14, 2014) (Rosenbaum, J.) (citing *United States v. Jones*, 143 F.3d 1417, 1418–19 (11th Cir. 1998)). For the reasons stated below, the Court finds that all of these factors were present in this case.

Defendant's claim that he was promised a sentence of ten years of imprisonment or misadvised about the applicable penalties is contrary to Defendant's September 12, 2018 plea colloquy. Defendant confirmed to the Court that he understood that Count Five is punishable by a mandatory minimum term of imprisonment of seven years up to life, consecutive to any and all other sentences, and that Count Seven is punishable by a mandatory minimum term of imprisonment of 25 years up to life, consecutive to any and all other sentences. (Dkt. 25-27.) Defendant also confirmed that no one promised him anything to have him plead guilty. (*Id.*) These

statements refute Defendant's claim that he was promised a sentence of ten years of imprisonment or was not advised about the applicable mandatory minimum terms of imprisonment.

Defendant further argues that his attorney failed to advise him about the possibility of being sentenced as a career offender. However, the Eleventh Circuit has confirmed that a defense attorney's failure to explain the possibility of being sentencing as a career offender does not undermine the knowing and voluntary nature of the guilty plea where the defendant, during the change of plea hearing, acknowledges the maximum possible sentence and that the sentence could be greater than anticipated. *See United States v. Himick*, 139 Fed. App'x 227, 229 (11th Cir. 2005) (holding trial court did not abuse its discretion in denying motion to withdraw guilty plea based on claim that attorney failed to advise defendant of possibility of being sentenced as career offender); *United States v. Herrington*, 350 Fed. App'x 363, 369 (11th Cir. 2009) (fact that defendant was unaware of possible of career offender sentence did not render guilty plea unknowing and involuntary where defendant was advised of possible maximum sentence and that he could not rely on sentencing estimates of counsel); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (affirming the denial of a motion to withdraw a guilty plea based on a defendant's contention that he relied on his attorney's underestimation of his potential sentence under a plea agreement where the defendant was informed of the applicable minimum and maximum penalties, that he could not rely on his counsel's prediction, and that the sentence actually imposed by the court could differ from any estimate the defendant received from anyone, including his attorney). Here, Defendant was advised of the maximum possible sentences he faced and was further advised that his expectations about his sentence were not binding and would not be a basis to withdraw his plea. (Dkt. 510 at 16-17.)

In addition, Defendant has argued in part that his counsel failed to specifically calculate Defendant's sentencing guidelines range. Under the current advisory guidelines, however, even an attorney's mistaken erroneous sentence estimate does not render a plea involuntary so long as the defendant acknowledged the applicable minimum and maximum penalties. *See Himick*, 139 Fed. App'x at 228-29. Defendant was properly advised during the plea colloquy that the guidelines were only advisory, and he was further advised of the potential punishment he faced. Thus, counsel's failure to precisely calculate or predict how the guidelines would apply to Defendant does not render the plea involuntary where the plea colloquy meets all of the core concerns of a knowing and voluntary guilty plea.

The Eleventh Circuit has also repeatedly instructed district judges to consider the timing of a defendant's request to withdraw a guilty plea. For example, a defendant's "swift change of heart" implies that he hastily decided to plead guilty. In contrast, a lengthy delay between the plea and the request suggests something more—a calculated effort by the defendant to improve his position. *See United States v. Rogers*, 848 F.2d 166, 168–169 (11th Cir. 1988); *United States v. Gonzalez–Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). Here, Defendant pled guilty on September 12, 2018. (Dkt. 255.) Defendant did not inform the Court that he wished to withdraw his plea until May 31, 2019—a delay of over eight months. (Dkt. 506.) Thus, the evidence does not show that Defendant experienced a change of heart after hastily pleading guilty. This consideration weighs against Defendant's arguments.

### C. Conservation of Judicial Resources and Prejudice to the Government

Because Defendant failed to satisfy the first two *Buckles* factors, the Court need not "give particular attention" to the remaining factors. *Gonzalez-Mercado*, 808 F.2d at 801. However, even looking to the remaining factors, both weigh against Defendant. Judicial resources would not be

conserved by permitting Defendant to withdraw his plea. In addition, the United States would be prejudiced if Defendant were allowed to withdraw his plea. *See United States v. Santiesteban*, 573 Fed. Appx. 857, 858 (11th Cir. 2008) (upholding guilty plea would avoid a trial and conserve judicial resources); *United States v. Dandridge*, 281 Fed. Appx. 881, 884 (11th Cir. 2008) ("Proceeding with a trial in this case would not conserve judicial resources and is likely to prejudice the government."); *United States v. Lancaster*, 137 Fed. Appx. 316, 319 (11th Cir. 2005) ("Judicial resources would not be conserved if the court allowed the plea change and the government would be prejudiced if he were allowed to withdraw his plea.").

## CONCLUSION

After considering the record and the evidence presented, including the plea colloquy, Defendant's testimony, and the testimony of Defendant's counsel, the Court finds Defendant has not established that he did not receive the close assistance of counsel or that his plea was not knowingly and voluntarily entered. Accordingly, it is

**RECOMMENDED** that Defendant's Motion to Withdraw Guilty Plea (Dkt. 513) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida on October 16, 2019.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


Copies furnished to:
Counsel of Record